KIRTLAND & PACKARD LLP
Michael Louis Kelly - State Bar No. 82063
mlk@kirtlandpackard.com
Behram V. Parekh - State Bar No. 180361
bvp@kirtlandpackard.com
Joshua A. Fields - State Bar No. 242938
jf@kirtlandpackard.com
2041 Rosecrans Avenue, Third Floor
El Segundo, California 90245
Telephone: (310) 536-1000
Facsimile: (310) 536-1001

*Counsel for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL DAPICE, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>Capital One Bank (USA), N.A. and DOE DEFENDANTS 1-10, et al.<br><br>                    Defendant. | Case No.: CV 14-6961-GW (AGRx)<br><br>Assigned to the Hon. George H. Wu<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES, COSTS, AND SERVICE AWARD**<br><br>Date: _ April 21, 2016<br>Time:   8:30 a.m.<br>Ctrm:   10 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................**Error! Bookmark not defined.**

I.     INTRODUCTION ................................................................... 1

II.    RELEVANT FACTUAL AND PROCEDURAL
       BACKGROUND ................................................................... 2

       A.     Background ................................................................ 2

       B.     Procedural History ..................................................... 2

       C.     The Settlement Process .............................................. 4

       D.     The Settlement ........................................................... 4

       E.     Individual Class Member Benefit ............................... 5

III.   PLAINTIFF'S COUNSEL'S REQUEST FOR 25% OF THE
       COMMON FUND IS WELL SUPPORTED.......................... 6

       A.     Application of the Percentage-of-the-Fund Method Is
              Appropriate. ............................................................... 6

       B.     The Percentage-of-the-Fund Analysis Supports Plaintiff's
              Counsel's Fee Request. ............................................... 8

              1.     Plaintiff's Counsel Have Obtained An Excellent
                     Result for the Class.......................................... 9

              2.     The Risk Involved with the Litigation Supports the
                     Fee Request. .................................................. 10

              3.     The Skill Required and Quality of Counsel's Work
                     Supports the Fee Request. .............................. 12

              4.     Plaintiff's Counsel's Willingness to Work on
                     Contingency Supports the Fee Request............. 14

              5.     The Requested Fee Comports With, or Is Less
                     Than, Fees in Similar Actions. ....................... 15

       C.     A Lodestar-Multiplier Cross-Check Confirms the
              Reasonableness of the Requested Fee. ...................... 17

              1.     Plaintiff's Counsel's Lodestar is Reasonable.......... 18

              2.     The Fee Requested Represents a Downward
                     Multiplier. ...................................................... 19

IV.    THE PAYMENT OF COSTS IS FAIR AND REASONABLE......... 20

V.     THE REQUESTED SERVICE PAYMENT FOR PLAINTIFF
       IS REASONABLE.............................................................. 21

VI.    CONCLUSION.................................................................... 23

# **TABLE OF AUTHORITIES**

## FEDERAL CASES

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ............................................... 16

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
  1991 WL 427893 (S.D. Cal. May 6, 1991) ...................................... 9, 16

*Blum v. Stenson*,
  465 U.S. 886 (1994) ............................................................................ 18

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .............................................................................. 6

*Broadcom Corp. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sept. 12, 2005) ............... 9, 11

*Charles Schwab Corp. Secs. Litig.*,
  2011 U.S. Dist. LEXIS 44547 (N.D. Cal. April 19, 2011) .................... 9

*Chavez v. WIS Holding Corp.*,
  2010 U.S. Dist. LEXIS 56138 (S.D. Cal. 2010) ................................. 23

*Cook v. Tiffany & Co.*,
  2011 U.S. Dist. LEXIS 106230 (S.D. Cal. 2011) ............................... 23

*Craft v. County of San Bernardino*,
  624 F.Supp. (C.D.Cal. 2008) ................................................... 9, 17, 20

*Ferrero Litig.*,
  2012 U.S. Dist. LEXIS 94900 (S.D. Cal. 2012) ................................. 22

*Garner v. State Farm*,
  2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010) ..................... 9

*Glass v. UBS Fin. Servs.*,
  2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ..................... 17

*Hanlon v. Chrysler
  Group*, 150 F.3d 1011 (9th Cir. 1998) .................................. 6, 7, 17, 19

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011)......................................................... 22

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................ 10

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
  2010 U.S. Dist. LEXIS 109829 (S.D. Cal. Oct. 15, 2010) ................. 17

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ................................................ 7, 8

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011)..........................................................................passim

*In re Corel Corp. Inc. Sec. Litig.*,
 293 F. Supp. 2d 484 (E.D. Pa. 2003) ................................................................ 16

In re CV Therapeutics, Inc. Securities Litig.,
 2007 WL 1033478 (N.D. Cal. April 4, 2007) .................................................... 16

*In re Gen. Instruments Sec. Litig.*,
 209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................ 16

*In re Heritage Bond Litig.*,
 2005 WL 1594403 (C.D. Cal. Jun. 10, 2005) ................................................9, 16

*In re HPL Techs., Inc., Sec. Litig.*,
 366 F. Supp. 2d 912 (N.D. Cal. 2005) .............................................................. 12

*In re M.D.C. Holdings Sec. Litig.*,
 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) .................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000).........................................................................8, 15

*In re Mercury Interactive Corp.*,
 618 F.3d 988 (9th Cir. 2010)............................................................................... 6

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................passim

*In re Public Serv. Co. of New Mexico*,
 1992 WL 278452 (S.D. Cal. July 28, 1992) ..................................................... 16

*In re Rite Aid Corp. Sec. Litig.*,
 396 F.3d 294 (3d Cir. 2005)............................................................................... 16

*In re Safety Components, Inc. Sec. Litig.*,
 166 F. Supp. 2d 72 (D N.J. 2001) ..................................................................... 20

*In re Sumitomo Copper Litig.*,
 74 F. Supp. 2d 393 (S.D.N.Y. 1999)................................................................. 16

*In re Washington Public Power Supply System Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994)........................................................................15, 18

*Jacobs v. Cal. State Auto. Ass'n Inter-Insurance Bureau*,
 2009 U.S. Dist. LEXIS 101586 (N.D. Cal. Oct. 27, 2009)................................ 17

*Kerr v. Screen Extras Guild, Inc.*,
 526 F.2d 67 (9th Cir. 1975)............................................................................... 18

*Knight v. Red Door Salons, Inc.*,
 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ...........................7, 8, 16

*Kurzweil v. Philip Morris Cos.*,
  1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999) ................................... 16

*Linerboard Antitrust Litig.*,
  2004 U.S. Dist. LEXIS 10532 (E.D. Pa. Jun. 2, 2004) ....................................... 16

*M.D.C. Holdings Sec. Litig.*,
  1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) .................................... 9

*Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1995) ............................................................... 20, 21

*Medical X-Ray Film Antitrust Litig.*,
  1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ..................................... 16

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) ........................................................................................ 20

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ........................................................................ 6, 8

*Public Serv. Co. of New Mexico*,
  1992 U.S. Dist. LEXIS 14888 (S.D. Cal. July 28, 1992) .................................... 9

*Relafen Antitrust Litig.*,
  2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) ..................................... 16

*Ross v. US Bank Nat. Ass'n*,
  2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) ............................... 22

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................... 22

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ........................................................................... 8

*Steiner v. Am. Broad. Co.*,
  248 Fed. Appx. 780 (9th Cir. 2007) ................................................................. 20

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ........................................................................ 8, 15

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .................................................................. 20

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................... passim

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .............................................................................. 20

STATE CASES

*Lealao v. Beneficial California, Inc.*,
  82 Cal. App. 4th 19 (2000) ............................................................................. 19

FEDERAL RULES

Federal Rule of Civil Procedure 23(b)(3) .................................................................... 4

Rule 23 of the Federal Rules of Civil Procedure ........................................................ 2

OTHER AUTHORITIES

3 *Newberg on Class Actions* § 14.03 ....................................................................... 20

*MCL 4th* § 14.122, at 261 ....................................................................................... 19

*Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*,
  7 Journal of Empirical Legal Studies 248 (2010) ................................................. 7

Federal Judicial Center, *Manual for Complex Litigation*, § 27.71 .......................... 10

## I.   **INTRODUCTION**

Counsel for named Plaintiff Daniel Dapice and the certified class respectfully move this Court for: (a) an award of attorney's fees in the amount of $87,500 for distribution to Plaintiff's Counsel, which is 25% of the common fund created for the Class (and represents a multiplier of only 0.25 on Counsel's Lodestar of more than $250,000); (b) reimbursement from the Settlement Payment[1] of Plaintiff's Counsel's reasonable out-of-pocket expenses of $3,735.64 necessarily incurred in the prosecution of the case; and (c) a Service Award to Mr. Dapice consisting of a $2,000 payment, reduction of the balance on his Capital One credit card account to $0, and a request for deletion of the negative trade line information for his account.

Plaintiff's Counsel seeks fees under the percentage-of-the-fund method. Taking into account the significant risks associated with the litigation, the complexity of the litigation process, and the result obtained for class members, Plaintiff's Counsel's request is entirely consistent with the Ninth Circuit's 25% benchmark in such cases. *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).  Plaintiff's Counsel's request is also supported by a lodestar-multiplier cross-check.  Plaintiff's Counsel seeks a lodestar enhanced by a multiplier under 0.25, which is on the low end of the range for such multipliers established by the Ninth Circuit, and which is well supported by the level of skill and complexity of legal work required in this litigation, along with the substantial result achieved for the Class.  *Id.* at 1051 & n.6.

The Settlement Agreement – providing for a Settlement Payment of $350,000 – represents ***more than 50 percent of the full damages estimated to be sustained by class members***, minus requested fees and costs.  (*See* Declaration of Behram V. Parekh ("Parekh Decl."), ¶¶ 16-17)  This outstanding result reflects the

---

[1] Unless otherwise indicated, the capitalized terms in this memorandum shall have the same meaning as specified in the Settlement Agreement.  (Docket Entry ("D.E.") 33, Ex. A, Settlement Agreement)

expertise, skill, and tenacity of Plaintiff's Counsel.  The Settlement provides this Nationwide Class of consumers with a significant *cash* recovery.  Each individual who receives notice, unless they affirmatively choose to opt-out, will *automatically* receive their calculated pro-rata recovery, *without having to do anything more*.  Although the actual dollar amount of that recovery to each class member ranges based upon the amount of the balance transfer obtained by the class member, if the Court grants Plaintiff's request for fees, costs, and service award, each Class Member on average will receive *over 39 percent* of their estimated damages.[2]  (Parekh Decl., ¶¶ 16-17)  In light of this strong result for the Class Members, and for the reasons discussed below, Plaintiff's Counsel respectfully submits that the requested fees, expenses, and Service Award are well-supported requests that should be granted.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   Background

In September 2014, Plaintiff brought this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated, seeking to represent all persons subjected to Capital One's practice of mailing balance transfer offers to its customers offering a 0% for life interest rate on the transferred balance, and then subsequently increasing the 0% interest rate after six months.  (*See* D.E. 16, First Amended Complaint)  Like all of the Settlement Class Members he now represents, Plaintiff received such a balance transfer offer from Capital One, and cashed the balance transfer check but did not receive a 0% interest rate for the life of the transferred balance.  (*See id.*)

### B.   Procedural History

Counsel for named plaintiff Daniel Dapice began investigating his claims

---

[2] The actual dollar amount recovered by any class member ranges so although Plaintiff can calculate an average net recovery of approximately $101.00 per Class Member (after subtracting for the requested fees and costs), that number is meaningless for any particular Class Member.

against defendant Capital One in July 2014. Plaintiff's original class action complaint was filed on September 5, 2014 alleging a cause of action for Breach of Contract. Plaintiff's counsel prepared and filed a First Amended Complaint shortly thereafter. The parties then engaged in written discovery, numerous meet and confer conferences related thereto, and Plaintiff' counsel noticed a number of depositions of Capital One. At that stage, counsel for the parties began discussing the scope of the damages and whether a class action settlement was possible.

Thereafter, the parties engaged in months of class discovery and substantively as to Plaintiff's individual claim, in preparation for Plaintiff's filing of his Motion for Class Certification. As part of the discovery process, K&P served and responded to significant written discovery, reviewed over 1,400 pages of responsive documents produced by Capital One, conducted significant investigation of the underlying claims, and worked with Plaintiff to prepare and serve comprehensive responses to Defendant's document requests. K&P also prepared for and defended Plaintiff at his deposition by Capital One's counsel. (Parekh Decl., ¶ 13)

Plaintiff's counsel also engaged in numerous, lengthy, and highly contentious meet and confer discussions with Capital One's counsel regarding the discovery propounded by both sides, and responses thereto. The meet and confer process required numerous, lengthy conferences, as well as drafting of a substantial number of extensive meet and confer letters. Additionally, due to filing deadlines, counsel for Plaintiff also drafted and exchanged with Capital One's counsel a Joint Stipulation on numerous discovery issues in compliance with Local Rule 37-2, regarding the parties' disputes over various written discovery items, in preparation for filing motions to compel. However, these documents were ultimately not filed with the Court because the discovery disputes were resolved at the eleventh hour. (Parekh Decl., ¶ 14)

### C.    The Settlement Process

During this lengthy and extensive discovery process, and the related discovery disputes, in or about May 2015, Plaintiff and Capital One agreed to mediate the issues set forth in the operative First Amended Complaint before the Honorable John Leo Wagner (Ret.).   The Parties proceeded with preliminary discussions related to contested legal issues prior to the mediation, which included numerous telephone calls, exchanges of information, and the submission of extensive mediation briefs, ultimately leading to an in-person mediation with Justice Wagner on June 18, 2015.  On that date, the Parties agreed to preliminary settlement terms.  Ultimately, after further negotiation on the final, detailed terms of the settlement, the Parties finalized the Settlement Agreement, and exhibits, which was executed in full on September 25, 2015.  (Parekh Decl., ¶ 15)

### D.    The Settlement

The Parties' Settlement Agreement proposed certification of a Settlement Class in the Action pursuant to Federal Rule of Civil Procedure 23(b)(3) consisting of:

> All natural persons who are or were Capital One cardholders whose accounts are current, meaning they are not charged off or in bankruptcy status, as of the Effective Date, who used one of the blue access checks Attached to Offer 13732 or Offer 14294 to transfer a balance to their Capital One account, and who received 0% APR for six months on the transferred balance.

(D.E.  33, Ex. A, Settlement Agreement at page 8, ¶ 3.1)

During During discovery, K&P determined that there are approximately 2,600  members of the proposed Settlement Class (including joint accountholders), and that the estimated amount of finance charges assessed on balances transferred by Settlement Class Members, as of September 21, 2015, totals $666,372.

### E.    Individual Class Member Benefit

The proposed settlement provides, as more fully set forth in the Settlement Agreement, a substantial benefit to proposed Settlement Class Members. Specifically, each Settlement Class Member receives a payment in the Benefit Amount: the amount of the balance transferred to a qualified account by using one of the blue checks attached to the balance transfer offer, multiplied by the Benefit Percentage, i.e. the ratio of the Merits Amount [the $350,000 Settlement Payment less Court-approved attorneys' fees and costs] dividing by the total individual balance transfer amounts of the Final Settlement Class.  Plaintiff's Counsel seeks fees of 25% of the Settlement Payment, and costs in the amount of $3,735.64, so the Merits Amount is anticipated to be in the range of $260,000 if Class Counsel's motion for fees and costs is granted.  Assuming the Court grants Plaintiff's requests as to fees and costs, each Class Member on average will receive approximately 39% of their estimated finance charges.  (D.E. 33, Ex. A, Settlement Agreement at pages p. 3, ¶¶ 1.3, 1.4; p.5, ¶1.18; p.6, ¶1.29, p.14, ¶¶ 5.1-5.2; Parekh Decl., ¶¶16-17)

The total benefit obtained of $350,000 represents *more than 50 percent* of the total estimated class-wide damages of $666, 372.  (Parekh Decl., ¶¶ 16-17)  Given the significant risks associated with the litigation, including the very real possibility that a class would not be certified, such a large percentage of the total potential recovery represents a spectacular result for class members.

Plaintiff was also able to negotiate that the payment component of the requested Service Award to Plaintiff is paid directly by Capital One and *will not reduce the Benefit Amount*.  (D.E. 33, Ex. A, Settlement Agreement, at p. 5, ¶ 1.18) Thus, each Settlement Class Member will receive their proportional share of the Benefit Amount reduced solely by the attorney's fees and costs awarded by the Court and proportionally allocable to the Settlement Class Member. (*Id.*; Parekh Decl., ¶¶ 16-17)

**III.     PLAINTIFF'S COUNSEL'S REQUEST FOR 25% OF THE COMMON FUND IS WELL SUPPORTED.**

Plaintiff's Counsel seeks an award of attorneys' fees of $87,500 or 25% of the Settlement Payment of $350,000 plus requested expenses.

Where counsel for a class seek fees from a common fund, courts within the Ninth Circuit have discretion to use one of two methods to determine whether the request is reasonable: "percentage-of-the-fund" or "lodestar/multiplier." *Id.* at 963-64; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010); *Vizcaino*, 290 F.3d at 1048–49 (9th Cir. 2002); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Plaintiff's Counsel's request for fees is reasonable under and warrants application of the percentage-of-the-fund analysis, a conclusion confirmed by the lodestar-multiplier cross-check that courts in the Ninth Circuit typically perform.

**A.     Application of the Percentage-of-the-Fund Method Is Appropriate.**

The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (considering attorneys' fees in securities settlement and noting that the

common fund doctrine is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel").

Unsurprisingly, given this equitable principle, courts prefer a percentage-of-the-fund model over a lodestar-multiplier approach in cases where it is possible to ascertain the value of the settlement through the existence of a common fund and/or quantifiable practice changes.  *See In re Bluetooth*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Omnivision*, 559 F. Supp. 2d at 1046 ("[U]se of the percentage method in common fund cases appears to be dominant."); *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, *13 (N.D. Cal. Feb. 2, 2009) (same); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-78 (N.D. Cal. 1989) (discussing advantages of percentage of recovery method in common fund cases).

Further confirming courts' preference for awarding attorneys' fees in class cases on a percentage-of-the-fund-basis, an empirical study based on eighteen years of published opinions on settlements in 689 common fund class actions and shareholder derivative settlements in both state and federal courts found that: (1) 83% of cases employed the percentage-of-the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6% from 2003 to 2008.  *See* Theodore Eisenberg & Geoffrey P. Millery, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 Journal of Empirical Legal Studies 248, 267-69 (2010).

By contrast, courts rely on the lodestar method under circumstances not applicable here, *i.e.*, when "there is no way to gauge the net value of the settlement or of any percentage thereof."  *Hanlon*, 150 F.3d at 1029; *In re Bluetooth*, 654 F.3d

at 941 (lodestar appropriate "where the relief sought and obtained is often primarily injunctive in nature and thus not easily monetized").  This limited use of the lodestar method relates in part to its potential deterrent effect: "[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino*, 290 F.3d at 1050 n.5; *see also In re Activision*, 723 F. Supp. at 1378 (observing that application of the lodestar method may encourage "abuses such as unjustified work" and therefore "does not achieve the stated purposes of proportionality, predictability and protection of the class").

For these reasons, Plaintiff's Counsel submit that the Court should use the standard percentage-of-the-fund approach to determining the award of attorneys' fees in this action.

**B.    The Percentage-of-the-Fund Analysis Supports Plaintiff's Counsel's Fee Request.**

Plaintiff's Counsel's request for $87,500 in attorneys' fees -- 25% of the common fund -- is fair and reasonable under the circumstances of this case. Twenty-five percent of the common fund is the benchmark for an attorneys' fee award in the Ninth Circuit.  *See In re Bluetooth*, 654 F.3d at 942; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson*, 886 F.2d at 272.  Indeed, even an award in excess of the benchmark may be proper under certain circumstances. *Vizcaino*, 290 F.3d at 1048-1050.  Courts in the Ninth Circuit frequently award fees greater than the benchmark.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048-1050; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds th[e] benchmark.").[3]  Based on this authority Plaintiff's Counsel's

---

[3] *See also, e*.g., *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, at

*Footnote continued on next page*

request for only the benchmark is conservative.

Courts in this district have awarded class counsel 25% of a common fund or greater in a number of cases, even at a much higher multiple to the lodestar than Plaintiff's counsel's request here.  *See e.g. Craft v. County of San Bernardino*, 624 F.Supp. 1113 (C.D.Cal. 2008), 1123-1127 (awarding class counsel 25% of the common fund, at a 5.2 multiplier to the lodestar, stating "25% of the fund is the appropriate percentage absent some strong reason to make an upward or downward departure."); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. Jun. 10, 2005) (confirming award of 33 1/3 % of common fund as a "reasonable percentage award");  *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41993, *19 (C.D. Cal. Sept. 12, 2005) (awarding 25% fee to class counsel from common fund).

Here, Plaintiff's Counsel's request is supported by the five factors that federal courts in the Ninth Circuit use to determine the reasonableness of fees when determining what percentage of the fund to award in common fund cases:  (1) the results achieved; (2) the risk involved with the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases.  *See*, *e.g*., *Vizcaino*, 290 F.3d at 1048; *In re Charles Schwab Corp. Secs. Litig.*, 2011 U.S. Dist. LEXIS 44547, *26 (N.D. Cal. April 19, 2011).

### 1.      Plaintiff's Counsel Have Obtained An Excellent Result for the Class.

The significant settlement that Plaintiff's Counsel negotiated for the Class supports the fee request.  The Supreme Court has held that in determining the

---

*Footnote continued from previous page*
*17 (N.D. Cal. Feb. 2, 2009) (30%); *In re Public Serv. Co. of New Mexico*, 1992 U.S. Dist. LEXIS 14888, at *21 (S.D. Cal. July 28, 1992) (one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 U.S. Dist. LEXIS 12579, at *2 (S.D. Cal. May 6, 1991) (one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990 U.S. Dist. LEXIS 15488, at *31-32 (S.D. Cal. Aug. 30, 1990) (30% plus expenses); *Garner v. State Farm*, 2010 U.S. Dist. LEXIS 49482, at *5-6 (N.D. Cal. Apr. 22, 2010) (30% plus expenses).

amount of attorney's fees to award, a court should examine "the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p.336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members"). "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision*, 559 F. Supp. 2d at 1046.

Plaintiff's Counsel have secured a $350,000 common fund settlement, out of total potential estimated damages available to class members, even after judgment and trial, of approximately $666,372. (Parekh Decl., ¶¶ 16-17)   This represents a recovery of more than 50 percent of *all* possible estimated recovery obtainable by class members, an outstanding result even in private litigation, much less class action litigation. (*Id.*)   Further, Plaintiff's counsel were able to negotiate a non-reversionary, non-claims-made settlement, and the identity and contact information for virtually all Class Members is known, so virtually one-hundred-percent of the recovery (minus fees and costs awarded by this Court) will go directly to Class Members, *without the class members needing to even file a claim form*. (Parekh Decl., ¶ 18)   The outstanding monetary relief that Plaintiff's Counsel achieved here in the form of the Settlement Payment, combined with the non-reversionary nature of the fund and the lack of a requirement for a claims process, justifies the requested fee award.

### 2.   The Risk Involved with the Litigation Supports the Fee Request.

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).

To prevail in any ongoing litigation of this case, Plaintiffs would be required

to successfully litigate a number of complex legal issues at the center of their claims, including unsettled and evolving issues dealing with class certification, statutes of limitation, and availability of recovery.  Capital One has contended, and discovery to date has shown that: shortly after sending the balance transfer offer, Capital One advised all putative class members of an error in the interest rate term; Capital One explained that it had intended to offer a 0% interest rate for six months; and Capital One honored the 0% for life term until approximately two weeks after mailing this letter, after which it honored the 0% for 6 months interest rate term. Based on this, Capital One has contended, among other things, that Plaintiff cannot meet his burden to certify a class, because, according to it, individualized inquiries concerning receipt of the correction letter defeat class certification, as do individualized inquiries concerning putative class members' obligation to mitigate damages.  Capital One has also contended that it will prevail in a summary judgment proceeding against Mr. Dapice's claim, based on the correction letter it contends it sent to Mr. Dapice, and a presumption of receipt under the mailbox rule. Thus, even if Plaintiff was to have prevailed on class certification, it is by no means certain that Plaintiff could expect a verdict in his favor on the sole claim in the litigation.

When Plaintiff's counsel first took on this lawsuit, there was a significant risk of non-recovery.  A fee award of 25% of the Settlement is appropriate when considered against the significant risks of the case and the more than a year and a half of hard-fought, complex, and challenging litigation that was required to achieve the settlement.  *See*, *e.g.*, *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41993, *19 (C.D. Cal. Sept. 12, 2005) (25% fee award appropriate where case involved complex factual and legal disputes where "[m]uch of the law governing the parties' claims and defenses is sparse, unsettled and still evolving").

3.   **The Skill Required and Quality of Counsel's Work Supports the Fee Request.**

The prosecution and management of a complex class action requires advanced legal skills and abilities that are to be considered when evaluating fees. *See In re Omnivision*, 559 F. Supp. 2d at 1047.  "A common fund fee award serves to reward counsel for creativity and skill in enlarging a settlement fund beyond what was thought possible or likely at the inception of the case."  *In re HPL Techs., Inc., Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005).

Plaintiff's Counsel are experienced class action litigators who have successfully prosecuted complex consumer cases.  (*See* Parekh Decl. at ¶¶ 3-8, Ex. A.)  Kirtland & Packard is a full service law firm founded in 1932 specializing in complex litigation, class action, and mass tort.  The lead attorneys from the firm on this matter, Behram V. Parekh and Joshua A. Fields, personally brought a wealth of class action litigation experience to this litigation.

Mr. Parekh is of counsel to Kirtland & Packard and has been litigating complex securities and consumer class actions for his entire 20 year career.  He has acted as lead or co-lead counsel in numerous complex class action and mass tort cases, including taking complex litigation through trial and appeal.  He is also a graduate of the Straus Institute for Dispute Resolution's Alternative Dispute Resolution program, which gives him a considerable advantage in effectively advocating the interests of his clients and putative classes in arbitrations and mediations, as well as understanding the dynamics of mediations, and how to use the mediation process to effectively settle complex cases.  (Parekh Decl. at ¶ 4)

Mr. Fields is a Senior Associate in Kirtland & Packard LLP's Los Angeles office, where he has been practicing since 2006. Mr. Fields focuses his practice on representing consumer plaintiffs in complex litigation matters, including class actions and mass actions, against large corporations for violations of state and federal consumer protection statutes. His efforts have resulted in the recovery of

tens of millions of dollars for his clients. Mr. Fields also has extensive experience on appellate matters in state and federal courts of appeals, where he has obtained numerous favorable opinions for consumers. Prior to joining the firm, Mr. Fields served as a Judicial Intern to the Honorable Louise Gans of the New York State Supreme Court in 2003.  Both Mr. Parekh and Mr. Fields have been named Southern California Super Lawyers and/or Rising Stars for multiple years as well as receiving other awards for excellence in litigation.  (Parekh Decl. at ¶ 5)

Along with Mr. Parekh and Mr. Fields, the Firm also has a full-fledged trial and appellate practice, with countless verdicts and over 180 published opinions to its credit since the Firm's founding in 1932, a list of which is included in the Firm's resume.  (*See* Parekh Decl, ¶¶ 3-6, Ex. A)  Kirtland & Packard has extensive experience in complex multi-party and multi-district litigation, and has litigated, or is currently involved in litigating, numerous complex JCCP and MDL proceedings, beginning with MDL-13 in 1967.  (Parekh Decl. at ¶ 6)

Kirtland & Packard has acted as lead counsel in multiple successfully concluded consumer class actions.  Further, Mr. Parekh and his Firm have litigated class action, complex litigation, and mass tort claims and have been appointed as lead counsel or a member of a lead counsel committee in numerous complex class action cases, including as a member of the lead counsel committee in *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, MDL-2151 in the Central District of California before Judge Selna, as co-lead counsel in *In re: Apple iPhone 4 Products Liability Litigation*, MDL-2188 in the Northern District of California before Judge Whyte, and as sole lead counsel in *In re: Pom Wonderful LLC Marketing and Sales Practices Litigation*, MDL-2199, in the Central District of California before Judge Pregerson, and in *In re: Oreck Corporation Halo Vacuum Air Purifiers Marketing and Sales Practices Litigation*, MDL-2317, in the Central District of California before Judge

Snyder.  (Parekh Decl. at ¶ 7)

Members of Kirtland & Packard have successfully served as lead or co-lead counsel in countless complex, class action, and mass tort cases involving products liability, securities, and employment issues, resulting in settlements or verdicts totaling hundreds of millions of dollars. A partial list of such matters includes:

$150,000,000 Drug liability litigation [parties confidential]

$63,900,000 Baker v. PrivatAir [age discrimination claim]

$18,500,000 Business litigation [parties confidential]

$12,200,000 Opperman v. Verizon [cellular class action claim]

$12,000,000 Great Escape Promotion Cases JCCP Proceeding [class action claim]

$10,000,000 Rubio v. Capital One Bank [class action claim]

$10,000,000 In re Mastec Inc. Securities Litigation [class action claim]

$7,000,000 Juvenile detention claim [Amande v. Los Angeles County]

$6,000,000 Defective roadway design [Meyers v. CalTrans]

$4,344,000 SUV design defect case [parties confidential]

$2,600,000 Insurance bad faith [Indochina v. Stratford Insurance Company]

(Parekh Decl. at ¶ 8)

As noted above, after more than a year and a half of litigation, Plaintiff's Counsel were able to negotiate a settlement for a significant percentage of the total potential recovery available to class members.  Counsel's skill and expertise, based upon their extensive experience in complex class action litigation, as reflected in this litigation, support the fee request.

### 4. Plaintiff's Counsel's Willingness to Work on Contingency Supports the Fee Request.

The requested fee is also justified by the financial risks undertaken by Plaintiff's Counsel in representing the Class on a contingency basis.  *See Vizcaino*,

290 F.3d at 1050 (plaintiff's counsel's representation of the class on a contingency basis is relevant to the assessment of the fee); *Torrisi*, 8 F.3d at 1377 (affirming 25% fee as reward to counsel "for carrying the financial burden of the case, effectively prosecuting it and, by reason of their expert handling of the case, achieving a just settlement for the class"). The public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk they might be paid nothing at all for their work. *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

In spite of the risks in this case as outlined, Plaintiff's Counsel have devoted substantial resources to the prosecution of this case on behalf of the Class, with no guarantee they would be compensated for their time or reimbursed for their expenses. Plaintiff's Counsel, among other things, obtained discovery for litigation and mediation, performed data analysis, and extensively prepared for and conducted mediation-negotiated settlement discussions. There was a substantial risk of nonpayment, particularly in light of the litigation risks outlined above. In spite of these risks, Plaintiff's Counsel zealously represented the interests of the Class.

**5.** **The Requested Fee Comports With, or Is Less Than, Fees in Similar Actions.**

Courts may refer to awards made in other settlements of comparable size when determining whether an award is reasonable. *See Vizcaino*, 290 F.3d at 1050 n.4.

The requested fee is consistent with or lower than the fees and costs awarded in cases involving similar consumer claims and/or similarly sized settlements. *See, e.g., In re Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund cases, the award exceeds that [25%] benchmark."); *In re Mego Fin. Corp. Sec. Litig.*, 213

15

F.3d 454, 457, 460 (9th Cir. 2000) (affirming fee award of one third of common fund); *Knight*, 2009 U.S. Dist. LEXIS 11149 at *18-*19 (awarding 30% fee); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. Jun. 10, 2005) (awarding one third fee); *In re Public Serv. Co. of New Mexico*, 1992 WL 278452, at *12 (S.D. Cal. July 28, 1992) (same); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL 427893, at *4 (S.D. Cal. May 6, 1991) (same); *In re M.D.C. Holdings Sec. Litig.,* 1990 WL 454747, at *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% in fees, plus expenses).[4]

The requested fee is also well within the range commonly awarded in cases where the settlement fund is much larger than the $350,000 fund here.  *See Vizcaino*, 290 F.3d at 1052, n.9 (survey of awards in cases with class settlements between $50-200 million); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (31.3% fee for settlement fund of over $1 billion); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. Jun. 2, 2004) (30% fee; $202 million fund); *In re Relafen Antitrust Litig.*, 2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) (1/3 fee; $175 million fund); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) (28.3% fee; $132 million fund); *Kurzweil v. Philip Morris Cos.*, 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999) (30% fee; $123 million fund); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (citing study finding that fee awards in the 25-30% range were "fairly standard" in class action settlements between $100-200 million); *Meijer v. Abbott Laboratories*, C-07-05985 (N.D. Cal. Aug. 11, 2011) (Wilken, J.) (33⅓%); *In re CV Therapeutics, Inc. Securities Litig.*, 2007 WL 1033478 (N.D. Cal. April 4, 2007) (30%) (Illston, J.).

The fee request is reasonable under the "percentage of the fund" method.

---

[4] *See also In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489-490, 498 (E.D. Pa. 2003) (1/3 fee); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (1/3 fee); *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at *15, 20 (E.D.N.Y. Aug. 7, 1998) (1/3 fee).

**C.**     **A Lodestar-Multiplier Cross-Check Confirms the Reasonableness of the Requested Fee.**

The Ninth Circuit has encouraged, but not required, that courts conduct a lodestar cross-check when assessing the reasonableness of a percentage fee award. *See In re Bluetooth*, 654 F.3d at 944 (stating "we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method" of determining fees); *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). Courts in the Ninth Circuit "typically use the lodestar method to cross-check the reasonableness of the percentage to be awarded." *Jacobs v. Cal. State Auto. Ass'n Inter-Insurance Bureau*, 2009 U.S. Dist. LEXIS 101586, *8 (N.D. Cal. Oct. 27, 2009).[5]

The lodestar-multiplier cross check confirms the propriety of the requested fee here. The first step in the lodestar method is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Hanlon*, 150 F.3d at 1029. At that point, according to recent Ninth Circuit authority, "the resulting figure may be adjusted upward or downward to account for several factors including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th

---

[5] Despite the typical practice, some courts have opted not to perform a lodestar cross-check where counsel have achieved exceptional results for the class through an early settlement. *See, e.g., Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, *49 (N.D. Cal. Jan. 26, 2007) ("where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check"); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 U.S. Dist. LEXIS 109829 (S.D. Cal. Oct. 15, 2010) (awarding 25% fee in securities settlement prior to decision on second motion to dismiss); *see also Craft*, 624 F. Supp. 2d at 1122 ("A lodestar-cross-check is not required in this circuit, and in some cases is not a useful reference point.").

Cir. 1975)); *see also In re Bluetooth*, 654 F.3d at 942.  In this instance, Plaintiff's Counsel are already only asking for fees that represent a downward multiplier.

### 1.    Plaintiff's Counsel's Lodestar is Reasonable.

Plaintiff's Counsel have incurred more than $175,000 in lodestar.  (Parekh Decl., ¶ 20)  In all, Plaintiff's Counsel have devoted more than 300 hours[6] to the litigation, consisting of, among other things, time spent investigating potential claims, analyzing legal issues, drafting the complaints, conducting discovery, analyzing data, engaging in settlement negotiations, creating the settlement documents, and settlement-related briefing.  (*Id.*, ¶¶ 10-15)

The time Plaintiff's Counsel have devoted to this case is reasonable given the complexity of the litigation.  Plaintiff's Counsel have prosecuted the claims at issue efficiently and effectively.  Counsel estimates they will spend at least 100 more hours to see this case through its final resolution, including the drafting of briefing in support of final approval, responding to inquiries from Class Members, responding to any objections that may be received, and attending the final approval hearing.   (Parekh Decl., ¶ 21)

Plaintiff's Counsel's hourly rates are also reasonable.[7]  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994).  As discussed above in Section II.B(3), Plaintiff's Counsel in this case are experienced, highly regarded members of the bar

---

[6] Plaintiff's counsel have also been efficient in incurring this loadstar and avoiding duplication of effort, with only a single Plaintiff's firm prosecuting the action, and only two attorneys from the firm accounting for over 90 percent of the time billed in the action.  (Parekh Decl., ¶ 20)

[7] Courts apply each biller's current rates for all hours of work performed, regardless of when the work was performed, as a means of compensating for the delay in payment. *In re Wash. Pub. Power Supply Sys. Sec Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here.  (Parekh Decl., ¶¶ 3-8, Ex. A) Plaintiff's Counsel's customary rates used in calculating the lodestar here have been approved by courts in this District and other courts.[8]

### 2.   The Fee Requested Represents a Downward Multiplier.

The fee requested by Plaintiff's Counsel reflects a downward multiplier of approximately 0.5 of Plaintiff's Counsel's lodestar.  Courts in the Ninth Circuit use similar factors in determining the reasonableness of a percentage-of-the-fund-award as they do in determining an adjustment of lodestar when conducting a lodestar-multiplier cross check, namely: results achieved, risks stemming from the complexity of the case, and the risk of nonpayment.  *See Hanlon*, 150 F.3d at 1029; *see MCL 4th* § 14.122, at 261.  Plaintiff's Counsel refer the Court to the above discussion of those factors for a more detailed analysis however, in summary, the multiplier here is reasonable given the outstanding result Plaintiff's Counsel have achieved for the Class in the creation of a $350,000 settlement fund; the risks involved in this contingent litigation; the complex issues involved in prosecuting this case; and the high-quality representation by experienced and skilled Plaintiff's Counsel.  *See Hanlon*, 150 F.3d at 1029; *In re Bluetooth*, 654 F.3d at 942.

Further, the multiplier is well below other multipliers courts in and out of the Ninth Circuit have accepted, which further supports its reasonableness.  In *Vizcaino*, the Ninth Circuit noted that multipliers have ranged from 0.6 to 19.6, and upheld an award with a 3.65 multiplier.  290 F.3d at 1050-51 and n.6.[9]  *See*

---

[8] The rates billed by the primary counsel billing in this litigation were $725 for Mr. Parekh, an attorney with over 20 years of experience and of counsel to Kirtland & Packard LLP, and $525 for Mr. Fields, who is a Senior Associate with Kirtland & Packard.  (Parekh Decl. at ¶ 20)

[9] *Vizcaino* involved a case with protracted litigation, a factor which supported a multiplier of the already large lodestar.  However, the Ninth Circuit also noted that multipliers are also appropriate when cases settle early: "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."  290 F.3d at 1050 & n.5; s*ee also Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 52-53 (2000) ("counsel should be rewarded"

*Footnote continued on next page*

*generally Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where multiplier was 6.85);  *Craft,* 624 F. Supp. 2d at 1125 (approving 25% fee award yielding a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class action litigation" and stating that "[m]ultipliers in the 3-4 range are common"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (approving multiplier of 3.5); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 104 (D N.J. 2001) (approving multiplier of 2.81 and citing cases approving multipliers from 2.04 to 3.6); *see also* 3 *Newberg on Class Actions* § 14.03 (multipliers "ranging from one to four are frequently awarded in common fund cases where the lodestar method is applied").

The multiplier of 0.5 is thus even below the spectrum identified by the Ninth Circuit in *Vizcaino*, above, and is well below the multipliers awarded in other courts within the Ninth Circuit.  The lodestar-multiplier cross check supports the fee request here.

## IV.     <u>THE PAYMENT OF COSTS IS FAIR AND REASONABLE.</u>

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement."  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)).  Plaintiff's Counsel have incurred out-of-pocket costs to date totaling $3,735.64, primarily for mediation fees, transcripts, and filing fees. Plaintiff's Counsel seeks reimbursement of these costs.  These out-of-pocket costs were necessary to secure the resolution of this litigation, and should be recouped.

---

*Footnote continued from previous page*
for obtaining a prompt settlement).

*See In re Media Vision*, 913 F. Supp. at 1367-72 (costs related to retention of experts, photocopy costs, travel expenses, postage, telephone costs, computerized legal research fees, and filing fees may be reimbursed).

## V.   THE REQUESTED SERVICE PAYMENT FOR PLAINTIFF IS REASONABLE.

Named Plaintiff Daniel Dapice was actively involved in the prosecution of this litigation, from inception to settlement.  (*See* Declaration of Daniel Dapice ("Dapice Decl."))  After contacting Kirtland & Packard upon learning that Capital One was insistent on charging him a 22.9% interest rate on his balance transfer, Mr. Dapice remained in close contact with his counsel, corresponding with them repeatedly regarding the status of the case and developments in the proceedings. (*See id.*, ¶¶ 10-16)  Mr. Dapice also reviewed the complaint filed on his behalf, corresponded with his counsel extensively regarding written discovery, and participated in preparing detailed discovery responses.  (*See id.*, ¶ 12)  He also maintained detailed financial records relating to his credit account, participating in producing more than on hundred pages of his records in response to discovery. (*See id.*)  Additionally, Mr. Dapice prepared for and appeared at a deposition conducted by Capital One's counsel.  (*See id.*)  He also had extensive contact with his counsel regarding settlement negotiations, and had questions about the scope of the potential settlement, and the relief putative class members would obtain under its terms.  (*See id.*, ¶¶ 14-17)  Mr. Dapice also carefully reviewed the proposed settlement documents in order to understand the terms of the settlement and benefits to the class, and discussed with his counsel the fairness and advisability of accepting the final settlement.  (*See id.*)   In short, Mr. Dapice actively and vigorously participated in the prosecution of this litigation throughout its existence.

Plaintiff's Counsel ask the Court to award a Service Award to named plaintiff Daniel Dapice, consisting of: a $2,000 payment; reduction on the balance of his account relating to the balance transfer to $0; and deletion of negative trade

line information for his account relating to the balance transfer.

Modest enhancement payments compensating named plaintiffs for work done on behalf of the class attempt to account for financial or reputational risks associated with the litigation, and promote the public policy of encouraging individual plaintiffs to undertake the responsibility of representative lawsuits. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646-47 (S.D. Cal. 2011) ("Incentive awards are fairly typical in class actions."). Here, the named plaintiff, Mr. Dapice, came forward and initiated contact with counsel to instigate the litigation when no one else did, agreed to serve as the named plaintiff in the underlying litigation, provided substantial assistance with the factual underpinnings of the case due to his organized and detailed financial records, reviewed and commented on substantive filings, furnished Plaintiff's Counsel with more than one hundred pages of documents in response to discovery, prepared for and sat for his deposition, provided substantial input in the progress of the settlement negotiations, and approved the terms of the Settlement Agreement after review and consultation with counsel. (*See* Dapice Decl.) Granting the Service Award[10] to Mr. Dapice is appropriate and consistent with awards approved by federal courts in this District given the substantial amount of effort and work which Mr. Dapice did, and the significant benefit that his work and record keeping provided to the success of the litigation. *See*, *e.g.*, *Ross v. US Bank Nat. Ass'n*, 2010 U.S. Dist. LEXIS 107857, at *6 (N.D. Cal. Sept. 29, 2010) (approving $20,000 service award); *In re Ferrero*

---

[10] The Service Award consists of: a $2,000 payment; reduction on the balance of his account relating to the balance transfer to $0; and deletion of negative trade line information for his account relating to the balance transfer. The non-monetary components of the Service Award are appropriate as Mr. Dapice already paid down the entire $4,400 balance transfer loan he obtained from Capital One, in a series of payments to Capital One, based on the 0% interest rate he accepted.

*Litig.,* 2012 U.S. Dist. LEXIS 94900, at *11 (S.D. Cal. 2012) (awarding service awards of $7,500 and $10,000); *Cook v. Tiffany & Co.*, 2011 U.S. Dist. LEXIS 106230, at *10 (S.D. Cal. 2011) (awarding service awards of $7,500); *Chavez v. WIS Holding Corp.*, 2010 U.S. Dist. LEXIS 56138, at *8 (S.D. Cal. 2010) (same).

**VI.     CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court grant Plaintiff's Counsel's Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Award.

DATED: January 25, 2016                    Respectfully Submitted,
                                           **KIRTLAND & PACKARD LLP**
                                           Michael Louis Kelly
                                           Behram V. Parekh
                                           Joshua A. Fields

                                    By:    /s/ Behram V. Parekh
                                           BEHRAM V. PAREKH

                                           *Counsel for Plaintiff and the Class*